Good morning your honor and your honors. May it please the court. My name is Daniel Olmos and it's my privilege to represent James Hitt here this morning. I'd like to reserve three minutes for rebuttal if I could. Yes you may, why'd you call? Understood your honor, thank you. Your honors, Mr. Hitt is 53 years old. He is developmentally disabled. He suffers from autism and Asperger's and he endured a truly horrific childhood marked by physical and sexual abuse as well as neglect. And when Mr. Hitt was given an effective life sentence in the district court, he was living a life of isolation in a rural part of the county in a trailer with his disabled and now deceased wife. And when he was arrested in this case, your honors, he had not, or at least there's no evidence or indication that he had harmed directly or touched inappropriately a child in more than 20 years. So what I'd like to invite the court first to focus on is the second issue we raised in our opening brief. And that is the approximately two dozen images and videos depicting child pornography at the trial, including truly horrific videos of child sodomy and the digital penetration of infants. And I'd like to start with that issue, if I may, because it appears inarguable that the district court erred in admitting that evidence. Because when the district court made its decision that the evidence depicting child pornography, that the probative value was not substantially outweighed by the potential to prejudice the jury under Rule 403, the district court had not even reviewed the evidence. Can you clarify that for me? I was reviewing the record very closely and just trying to determine what that statement was based on. So the district court didn't address whether or not he had read the materials. The government didn't concede that he hadn't read the materials as it has in other cases. So what is your assertion based on? My assertion is based on, Your Honor, the fact that there is no evidence in the record whatsoever that the district court itself reviewed the contraband. There's no evidence that the district court reviewed it. Is there evidence that the district court did not review it? Is there evidence of an absence of evidence? No, is there evidence that the district court did not review it? So in other words, the district court could have said it didn't review it, or there may be other evidence in the record that he didn't review it. I don't know how silence in the record establishes that the district court didn't review it. Your Honor, what we have here is a motion by the government by both parties, and there was a written ruling, I think six days later, addressing the issue. I credit Mr. Yang, government counsel. Both parties appear to have made it available to the district court, but there is no evidence in the record that the material was actually submitted to the court. In other words, it was offered to the court, but it was not submitted to the court prior to that ruling. And I think in the absence of a record, and what I think the government concedes here, is an absence in the record of evidence that the material went to the court, went to the judge prior to the judge's ruling. I think that's sufficient, Judge Acuda, to determine on this So just to make it, just so that I understand, the material was never in the courtroom or in the judge's chambers. The material was never put within the judge's hands. Is that what you're saying? That is my understanding from the record, and that is, I believe, the concession by the government in its papers, that the evidence was made available to the court, but that the court did not review it and never took that. What does wasn't it available mean? That trial counsel for the government offered to make available to the court that evidence to review those 17 images and six videos, I believe. And there is no evidence that the court took the government up on that offer. Okay, thank you. And your honor, and thank you for that, Judge Acuda, we know from United in 2007 where this court ruled, quote, we hold as a matter of law that a court does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate all that it must weigh. So in the briefing, the parties can disagree whether this court's opinion in Gano and this court's opinion in Marino-Balderrama should our position here, your honor, is that it really doesn't matter because under Curtin, the district court erred as a matter of law in admitting the contraband evidence and showing it to the jury without first reviewing it under 403. And so our position then is that the court should move directly to the issue of prejudice. And respectfully, your honors, we think that the court should consider the prejudice of the contraband videos and pictures, not in isolation, but in conjunction with and as being cumulative to the trial court's error in admitting the fact of Mr. Hitt's 1993 conviction for lewd and lascivious acts on a child under the age of 14. And we submit, your honors, again, that that appears to be the only evidence in this matter that Mr. Hitt has ever directly harmed or inappropriately touched a child. And it is our position that that conviction should have been excluded under both 404B and rule 403. And we invite the court to consider as we briefed the Powell decision out of the circuit, which pursuant to which the court ruled that under 404B where identity is at issue, right? Identity was the only real issue in this case, whether in fact, Mr. Hitt was the one who received and distributed that child pornography from the IP address at his home, that in that instance under 404B, this, the prior conviction should not come in under intent to prove identity. It cannot be admitted unless there is some uniqueness to both the current and the prior charge crime. In other words, that they are not sort of, we'll say commonly, common fact patterns where we believe and submit that these, both the charge and the prior crime certainly were. So if it's not available, not admissible for intent, not admissible for identity, we get to remoteness in time and we believe we have a concession by the government here that there is not a single published opinion considered by the district court or cited by the government in this case in which a conviction that old was ruled admissible under rule 404B. So under the 404B analysis and additionally the 403 analysis that we address in our briefs, we think it was there for the judge, the district court to admit that prior 1993 conviction and now we move. The government argues that the remoteness was an element of the identity because the argument that Mr. Hitt made was that he was not the person who sent the email and the email said, oh, I was in prison 20 years ago, or I was in prison for this sort of thing 20 years ago. And so that's the reason the 20-year-old conviction was probative of his was the person who sent the emails. Can you respond to that? Can your honor and again looking to the Powell decision from this court, what the court said in Powell is quote, if the characteristics of both the prior offense and the charge defense are not in any way distinctive. Powell was a completely different situation. I mean the evidence there was whether he had committed the second offense because he had committed the first offense in a completely different way. So Powell didn't seem to me to be very on point in this case. Could you respond to the specific argument that it was probative of his identity because it said he was in prison 20 years ago, which is what he's the person who is using the King James email stated? So I think my answer to that Judge Akuda is that the stipulation could have been far more narrowly tailored to that specific fact and not mention the fact that Mr. Hitt had in fact been convicted of child molestation. Those are crimes that are not similar and that is a crime that is not similar in kind to the charges he was facing in this matter. But that isn't the purpose for which it was introduced, right? It was introduced to say he was the person who was using the King James email account. Yes, Your Honor, that is true. But the prior offense, the prior conviction was certainly considered by the jury for far more than that. And the way that the evidence was submitted made clear to the jury that Mr. Hitt was convicted of child molestation. And we think, for that reason, if I may move to prejudice at this time, when you have a defense that is entirely distilled to identity. In other words, whether Mr. Hitt was the person who sent and received those images and those videos from the IP address in his home, and we can see there was not an insignificant amount of circumstantial evidence that he was, it came down to his credibility. And by the time Mr. Hitt took the witness stand, the jury had heard that he was a convicted child molester. And it had been made to view approximately two dozen images and videos showing truly horrific material. They had made up their mind, these jurors, before Mr. Hitt ever took the witness stand about his credibility. And one juror admitted as much and was excused. So the trial court's two errors meant that Mr. Hitt's credibility was absolutely eviscerated before he ever uttered a word on the witness stand. And it is our position, your honors, that that must constitute prejudice here. If I can move to the two sentencing matters, and I'm coming to some of the questions. Can I ask you, Mr. Olmos, before you move on, assuming we agreed with all of what you said about error and prejudice, doesn't the prejudice have to affect the verdict? And here, it seems the government offered and admitted some pretty significant evidence to establish that Mr. Hitt was, in fact, the person using the email address at issue. Why would this evidence have made a difference? Thank you, Judge Beatty. And I credit Mr. Yang, who is counsel for the government. They put on a strong case. There is no question about that. But that evidence was circumstantial. They tied logins and timing and dates of logins to emails sent from that King James email address. They tied that to logins to that particular identity on the server. It was circumstantial evidence, your honor. And the defense was that during several of those instances in which the government alleged that Mr. Hitt either sent or received the material, that Mr. Hitt was out of town. That he was either taking his wife to a medical appointment, or he was otherwise visiting his family. And that's why our position is that it truly came down to his credibility on the witness stand. Whether the jury believed Mr. Hitt's explanation, and whether he could address on cross-examination the mountain of circumstantial evidence that the government presented. And it's our position, Judge Beatty, that because of the trial court's errors in admitting that he had none, he had no possibility of gaining credibility by the time he took the witness stand. And if I may move briefly to sentencing, I think that the parties have briefed extensively the section 2G2.2 issue. We do concede that the 1993 conviction did constitute a prior predicate instance of sexual abuse. The question for this court really is whether that 2000 conviction did that. The court will recall that's the case in which Mr. Hitt's 17-year-old male co-worker, he asked, Mr. Hitt asked his 17-year-old male co-worker whether he had friends who could perform sexual acts. And when the co-worker said no, Mr. Hitt apparently asked him a single time whether he wanted to be orally copulated. Mr. Hitt was sentenced to probation. In that matter, I think he spent two weeks in jail. And it is our position, and we briefed this, that that conduct as abhorrent and distasteful as it was, is not a qualifying offense under the application note in the sentencing guidelines. It does not, either on the categorical approach or otherwise, meet any of the enumerated statutes, including 2242B. And we briefed that. So we think the error was plain. We think that the additional prongs of that analysis are governed by the United States Supreme Court's opinion in Molina-Martinez. We think that case is on all fours. And it holds that where there is that error in calculating the sentencing guidelines that we can assume that the additional prongs of that plain error standard are met. And I'd like to finish just briefly with the substantive unreasonableness. I started my argument by describing my client to the court. He is, again, developmentally disabled, suffering from numerous mental illnesses, was the victim of serial sexual abuse by numerous adults in his life, including his pastor. As a young child, he was described by his own mother as being retarded. He was living an isolated existence, again, 20 years at least out from directly harming children. And now he's serving an effective life sentences for receiving and sending images on a computer. And I will be frank with the court, and I know I'm out of time, but I had been doing this for some time. I had not before I was appointed in this case, reviewed the Dorvey opinion, the second circuit opinion from 2010. It's thorough and truly instructive, I think, for our matter here today. It's discussion of Kimbrough and the manner in which Congress has entirely abrogated the Sentencing Commission's child pornography is as persuasive as I've read. And there will become a point in time, probably 15 or 20 years from now, when Mr. Hitt, due to his intellectual and physical limitations, will be incapacitated and incapable of harming another human being, including another child. And we think that the district court abused its discretion when it determined that if Mr. Hitt is fortunate to see decades of his life after that point, that he will have to spend them in prison. Thank you, Your Honor. Thank you, counsel. Did you ask for rebuttal time? I did, and I did not do a very good job of preserving my time. Okay, I'll give you a couple minutes after Mr. Yang addresses your points. Thank you. May it please the court, Roger Yang for the United States. I was trial counsel below. The standard rule in a prosecution is that the government is entitled to present, prove its case by evidence of its own choice, or more exactly, that a criminal defendant may not stipulate or admit its way out of the full evidentiary force of the case the government chooses to present it. And in addition to this statement from Old Chief, the government in this case exercised restraint regarding how it picked the images and videos that it chose to show, and the uses that the government made of these images and videos. Mr. Yang, may I just ask a clarifying question? Do you concede that the district court admitted these images without viewing them in advance to weigh the prejudicial value? We agree with the appellant that there is no evidence in the record. The district court did not state that it had reviewed the evidence, and it did not state that it had not, that it ignored the evidence. And so on this record, there is no evidence that the district court actually went through and reviewed the evidence. You were the trial counsel for the government, so did you rule on the motion for the district court judge to review? No, Your Honor, not formally. Normally how this goes is that the government would lodge the exhibits to a motion to eliminate or filing, and then the district court would basically make a record regarding whether it had reviewed it. We did not actually lodge it in this case. What happened was prior to the motions eliminated, the government and the defense got together. We showed the exhibits we intended to show to the defense so that they had a basis for their motion eliminate. And then both parties obviously offered it to the court, but then we did not formally lodge the disk with the court. Our evidence and our evidence binders were available to the court prior to trial and then during trial. And the defense did have the images and videos that the government intended to show well in advance of trial to the point that even in the record, you can see where the defense anticipated where the government was going to show specific images and videos and made an objection. The concern obviously is whether the judge viewed them before he weighed the prejudicial value versus the probative value, etc. The government's position is that there is insufficient evidence before this court for this court to conclude that the district court had in fact viewed the evidence prior to trial. So you're saying we can't conclude that. So if we can't conclude that, then that means it's purging error. And what you need to argue is why it wasn't prejudicial. Yes, your honor. The government's argument is that on this record, the evidence was properly admitted under 403 and therefore not harmless. But in addition, the other evidence that was presented at trial is sufficient to make this harmless error. And to demonstrate... The main issue in this case was identity, right? It was the main issue. However, the defendant also testified and challenged pretty much everything else that the government was trying to proffer at trial. The defendant claimed, for example, that he didn't have any computer skills despite the evidence that he had gone to community college, obtained a computer certification, and was offering his services at flea markets to defragment hard drives and some other things. He claimed he tried an alibi defense. He claimed he had a journal demonstrating he wasn't present. Okay, even as to those two, I'm just wondering why it was the images, the pornographic images themselves were necessary for the government to even... Definitely not necessary for the government to prove identity, but even the latter two points you just made that were in dispute, I don't understand why the images come in for identity or even those other two issues. The government had to, for example, with regard to count two, establish that he knew that he was distributing an image or video of child pornography, for example. The government had to present evidence of the context that he was emailing this particular video to another user. The government put in the discussion prior to the sending of the video, the August 23rd email, where the recipient says, I'm looking for essentially videos involving boys. Then the defendant emails this particular video, exhibit 704, and says, this is a partial vid. And then later says, I only have these other videos involving boys. Here's another one. And so he had knowledge of what exactly he was sending. And then we obviously had to prove that it was child pornography. And so we played the video or a portion of the video for the jury. There were other videos where the defendant made specific references to the contents of the video or commented on the contents of the video. And this showed knowledge with regard to the contents of the video. The defendant in his statement mentioned a file with the file name Butterfly, for example. And with regard to exhibit 706, sure enough, he mentioned 6YO and then Butterfly. And sure enough, exhibit 706 is a file that was 6YO Butterfly 2. And so the government played that video because the defendant had, in his statement, mentioned that video. There were other videos that were on specific devices to show that the defendant possessed these images and videos on other devices. But it not only showed that, but it two CDs, the HP Backup 1 and 2. And then there was a third CD, James No. 2. The defendant claimed he didn't make those CDs and that he had no idea what was on them. And so the government had to demonstrate that not only did the defendant collect child pornography, but that he made HP Backup 1, HP Backup 2, and James 2. With regard to this 80 gigabyte hard drive, the defendant claimed that that came from Jeremy Brooks, and that he never used it, and that he had no idea what was on it. And so the government had to show that there was, in fact, child pornography on that hard drive that actually wasn't on the new computer, the HP Pavilion computer. And also, the government then showed that the defendant's resume, his credit reports, and other indicia demonstrated that it was the defendant who had that 80 gigabyte hard drive and used it. Even prior to the creation and use of the King James 123456 account, the defendant claimed in his testimony that he didn't know how to create a email account, let alone the King James 123456 account. And so the government showed, for example, with Exhibits 1, 2, and 3, the defendant not only knew how to access email, but that he knew how to download multiple files into a zip file. And then later, the government showed that when he was distributing this zip file, he actually specifically mentioned that it was a zip file. And so it went to rebut the defendant's claims regarding his computer expertise. But in addition to that, the defendant in some of those emails distributing this particular zip file also made claims about himself. He sent pictures of himself. He told other users where he lived. He even sent a link to a specific site that he claimed it was a Japanese site. And then the government showed through the forensic evidence, it was not only bookmarked on his main desktop that he admitted using, but that he had visited that particular link prior to emailing that link to this other user. The government was judicious in the way that it chose these images and videos, not only to show that an element it had to prove, that is that this was child pornography, but also that it was the defendant behind the keyboard. And also that the defendant not only collected child pornography, but collected it over multiple devices over a long period of time and possessed them on various devices as well. This also dovetails with the prior conviction admission, because at least several of these files were sent in emails that also referenced the defendant's prior conviction. And with regard to scaleness, again, it's a four-factor test and there's a balancing. However, the specificity of the defendant's own description of his prior conviction is what made it so highly probative. The government would argue that if a defendant stated in an email, I was convicted 30 years ago, and here's the docket number of my prior conviction, that that would be so probative as to identity that it would be admissible despite it being 30 years ago. Are you aware of any other case where a conviction that was 20 years old was admitted at a trial? No, Your Honor. But the government's contention is that this was so highly probative because of the specific description of the prior conviction. The charging documents for the 1993 case stated that the offense happened or the offense conduct happened over the summer of 1992. The email stating it was 20 years, I have not touched a child in 20 years or more, happened on August 27th, 2012, which is almost essentially 20, exactly 20 years ago. In addition, the defendant sent two other emails where he talked about the conduct. And that's why the stipulation not only specified the year of the conviction, but also that it, in very basic terms, involves sexual contact with a person under 14 years old. And again, there was a third email where the defendant stated that in response to one of the videos that the government showed, she is of the age and development of most of the girls, and that, which essentially matches up with the conduct admitted in the conviction and the conduct admitted in the email. Oh, go ahead. Yeah, I have another question as to the substantive reasonableness of this sentence. I recognize that it wasn't actually sentenced to life, but he will be 90 by the time he serves his sentence. So it's in effect a life sentence. Why do you think that was reasonable? The defendant's criminal history is the 1993 conviction, the 2000 conviction for molestation, and then a indecent exposure conviction in 2005 as a felony because he had these prior sex offenses. There was a discussion during the sentencing hearing regarding an incident that happened in 2011. The district court properly found that the defendant is essentially a repeat sex offender, and that this conviction and the statements where he's talking about how he's addicted to child pornography, he's addicted to sex, how he wishes he could commit essentially hands-on offenses, except for his outlet of child pornography, that the defendant would continue offending if he was to remain at liberty. And the district court did not give him the maximum sentence of 720 years or months. He gave him the statutory maximum for the most severe count, and that was a reasonable and essentially defensible statement, especially when the guidelines are life. Based on that, the government would ask that you affirm the conviction and sentence. Thank you. All right, thank you very much, Mr. Yang. Mr. Olmos, I'll give you two minutes. Thank you, Judge Wardlaw. Briefly, addressing counsel's last point, the guidelines in this case were actually the statutory max. When guidelines exceed the statutory max, we have to assume, and Duvay is clear about this, or Dorvey, that the guidelines range is not life, it is the statutory max. Second, with respect to the 1993 conviction, Mr. Yang has a strong argument that under a 403 analysis, that that conviction was highly probative. And that gets to Judge Akuta's point earlier this morning about his statements in the email. However, before you get to a 403 analysis, the district court had to conduct a 404B analysis to determine whether that information or that evidence, that conviction, was in fact admissible. And it is our prong about it not being too remote in time, that the court should have excluded the evidence under that balancing test. In other words, under the 404B analysis. We still think, under 403, the prejudicial effect substantially outweighed the probative value, but you don't even get to that probative value balancing test if you can't survive 404B analysis and we submit that you cannot with respect to that conviction. Finally, with respect to the images themselves, the government had other ways to prove that Mr. Hitt was the person who sent and received those images. And it proceeded in that manner for a lot of this trial. Their digital forensic examiner and their FBI agent discussed the emails, the receipt, the file names, the attachments. You can do all that without showing the jury the image and the videos themselves. And that's what this court held was appropriate in the United States v. Hay. It's a 2009 circuit argument. It's relied upon by the government. In that case, the district court acted that, in fact, as a gatekeeper. It prohibited the jury from seeing those images during the trial. And it made clear that if the jury specifically requested the images after the trial was completed in its deliberations, that the court would make those available. That's not what the court did here. And that's why we think the court erred. Thank you, Your Honor. Right. Thank you very much, counsel, for an excellent argument. United States v. Hitt is submitted.
judges: WARDLAW, IKUTA, BADE